710 A.2d 267

**Samuel David BOWDEN**

v.

**CALDOR, INC. et al.**

No. 81, Sept. Term, 1996.

Court of Appeals of Maryland.

June 2, 1998.

6

 

Allan B. Rabineau (A. Samuel Peregoff, on brief), Baltimore, for Petitioner.

Patricia M. Thornton (McCarthy, Bacon & Costello, L.L.P., on brief), Lanham, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI*, and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

ELDRIDGE, Judge.

This case presents several important issues concerning court review of jurors' punitive damages awards in tort actions.

## I.

In March 1988, the petitioner Samuel David Bowden, an African–American then sixteen years of age, was hired by the respondent Caldor, a regional retail department store chain, to work as a customer service representative in one of its Baltimore area stores. Shortly after reporting to work on June 15, 1988, Bowden was detained and interrogated for over four hours in a small, windowless office in the store by two employees of Caldor's security department, who accused him of stealing money and merchandise from the store. Bowden repeatedly denied their accusations. He made several attempts to leave the room or call his parents, but each time he was prevented from doing so by the security officers.

Bowden, out of fear, finally capitulated to the security officers' demands and signed a written statement, dictated by the security personnel, stating that he was responsible for thefts of money from the store. He was finally allowed to leave the store at approximately 11:00 p.m., nearly two hours after the store's scheduled closing time.

Bowden informed his parents of these events, and he and his mother returned to the store the following day to discuss the matter with the store's security manager and another store manager. During the discussion, the store manager

---

* Karwacki, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

shouted racial slurs at Bowden.[1] The security officer, in the presence of Bowden's mother, grabbed Bowden's arm, led him to his office inside the store, and demanded that he and his parents make restitution for the alleged thefts. When Bowden refused his demands, he was handcuffed and paraded through the store in full view of his fellow employees and store customers. He remained in full public view until Baltimore County police officers arrived and arrested him.

In December 1988, a juvenile court dismissed the charges against Bowden, finding that there was insufficient evidence from which to conclude that he had committed thefts from the store. In fact, there was no evidence that there had been any thefts.

Thereafter, Bowden commenced a civil action against Caldor and several of its security personnel in the Circuit Court for Baltimore City, seeking compensatory and punitive damages. His complaint contained five counts charging false imprisonment, malicious prosecution, defamation, wrongful discharge, and intentional infliction of emotional distress. Following a jury trial, Bowden was awarded $110,000 in compensatory damages, apportioned in varying amounts among the five torts. At the conclusion of a separate trial solely on punitive damages, the jury awarded Bowden $350,000 in punitive damages against Caldor. There was no indication, however, of the manner in which the award was to be apportioned among the five separate alleged causes of action.

Following the verdict, Caldor filed motions for judgment notwithstanding the verdict (JNOV), a new trial, and/or a remittitur. The circuit court granted the JNOV motion on the wrongful discharge and intentional infliction of emotional distress counts but denied the motion as to the remaining three counts. The effect of the Court's action was to reduce the

---

1. The evidence presented at trial indicated that the store manager told Bowden: "You people—you nigger boys make me sick, but you're going to burn for this, you sucker." The evidence also indicated that the security manager responded to this remark with a "smirk," manifesting his agreement with the statement.

compensatory damages award against Caldor from $110,000 to $60,000. The court also denied Caldor's motion for a new trial on punitive damages, and the court left the punitive damages award intact.

Caldor and Bowden both timely appealed to the Court of Special Appeals, and this Court issued a writ of certiorari prior to argument in the intermediate appellate court. While affirming the circuit court's post-trial rulings concerning liability, this Court reversed its denial of a new trial on the issue of punitive damages. *Caldor, Inc. v. Bowden*, 330 Md. 632, 641–664, 625 A.2d 959, 963–974 (1993). In so doing, the Court pointed out that there had been no apportionment of the punitive damages award among the various tort counts. Judge Chasanow for the Court explained (330 Md. at 663, 625 A.2d at 974):

"[O]ne of the purposes of punitive damages is to punish the wrongs of the defendant. The requirement of a compensatory damages foundation protects defendants from being punished for acts that the trial court determines the defendant did not commit. In assessing punitive damages, a jury might have been influenced by the number of distinct civil wrongs the defendants committed. In light of this concern and the clear weight of authority cited above, the award of punitive damages must be vacated and a new trial ordered for the sole purpose of calculating punitive damages based on the three remaining torts of false imprisonment, defamation, and malicious prosecution." [2]

The case was remanded to the circuit court for a new trial on punitive damages.

A second trial on punitive damages was held before a jury in the Circuit Court for Baltimore City. The transcribed testimony of the witnesses called during the first trial was read to the new jury, and both sides were allowed to present any new evidence relevant to punitive damages. Bowden presented

---

**2.** Caldor also argued that the amount of the punitive damages award was excessive, but we declined to address the issue. *Caldor, Inc. v. Bowden*, 330 Md. 632, 664, 625 A.2d 959, 974 (1993).

evidence of Caldor's financial condition and pecuniary resources. Caldor presented evidence of its loss prevention and store security policies.

Following the presentation of all evidence by both sides, the jury was instructed as to the policy and purposes underlying punitive damages awards, and the degree of proof required for such awards. The jury was informed of the amount of compensatory damages awarded in the first trial on the false imprisonment, defamation, and malicious prosecution counts, but it was not told of the amount of the first award of punitive damages. The jury subsequently awarded Bowden $9 million in punitive damages against Caldor, consisting of $3 million each for malicious prosecution, false imprisonment, and defamation.

Caldor timely filed a "Motion for remittitur and/or JNOV and/or for a new trial." The circuit court denied the motions for JNOV and a new trial. Nevertheless the court, holding that the award was excessive, granted the motion for a remittitur. The court reduced the amount of the punitive damages award against Caldor to $350,000, the exact amount awarded in the first trial, and apportioned the award among the three torts.[3] Although the circuit court purported to rely on several factors in reducing the punitive damages award to $350,000, the most important factor was that an award exceeding the prior jury award would have a "chilling effect" on a defendant's right to appeal. The circuit court thus stated:

> "To subject the defendants to nine million dollars in punitive damages after they successfully appealed an award of $350,000 strikes me as [a] kind of arbitrariness and violation of fundamental fairness …; and if there were no other reason to grant remittitur, for that reason alone, even though we're breaking new ground here and even though … *North Carolina v. Pearce* is somewhat of an attenuated, analogous, persuasive vehicle for reasoning, it stands out loud and clear that the Court of Appeals doesn't intend to

---

**3.** The court's apportionment was $116,500 for defamation, $117,000 for malicious prosecution, and $116,500 for false imprisonment.

bushwhack successful appellants and that the price of succeeding on appeal is not to be hit with a very large damage claim because that would have a chilling effect on people appealing in certain areas.

"And in order not to foreclose appellants' rights to appeal, knowing that they're going to suffer grave consequences by succeeding on appeal, there is no way that I can envision that the Court of Appeals would permit this nine million dollar verdict to stand where the original verdict was $350,000.

"So, if it were not for that reason— if there were not other reasons to join this, for that reason alone ... that in the context of the retrial it appears to be totally inappropriate to allow that except, again, using the analogy of *North Carolina v. Pearce,* where there is subsequent identifiable misconduct.

"So that if Caldor had continued to harass Mr. Bowden, attempted to stop him from getting employment in the Baltimore City Police Department, had conducted a fear campaign against his mother and father, then I think an award greater than $350,000 could have occurred...."

Bowden appealed to the Court of Special Appeals, and Caldor noted a "conditional cross-appeal" to that court.[4] The Court of Special Appeals affirmed in an unreported opinion. The intermediate appellate court, after noting that it "would ordinarily have grave doubts about the constitutionality" of the circuit court's failure to offer Bowden the option of either accepting the remittitur or having a new trial ordered, nevertheless concluded that this Court's prior mandate and opinion in the matter placed the case on "different ground." The intermediate appellate court interpreted our earlier mandate and opinion in *Caldor, Inc. v. Bowden, supra,* as providing that the amount of punitive damages awarded on remand

---

4. The jury also awarded punitive damages against three individuals employed by Caldor in its loss prevention and store security department. This part of the jury's verdict was not challenged on appeal.

could not exceed the $350,000 awarded at the first trial. The Court of Special Appeals explained as follows:

"[A]bsent subsequent evidence on remand of extraordinary circumstances bearing on the factors governing an award of punitive damages, the Court of Appeals did not envision that the damage award would have increased as a result of the retrial. Otherwise, the Court's discussion leading up to the remand for purposes of recalculation, stating that the jury may have been influenced by the distinct number of civil wrongs committed by Caldor, would have been mere surplusage. In fact, we doubt that if the Court of Appeals believed that a nearly thirty-fold increase in the award would be forthcoming, [it] would have thought it proper to remand the case.

\* \* \*

"Thus ... because a punitive damage award on retrial in excess of what was awarded in the original trial is inconsistent with the mandate and opinion of the Court of Appeals, then it necessarily follows that there would be no constructive purpose of the trial court to offer [Bowden] the choice between remittitur and a new trial because no matter how many new trials were given, a verdict over $350,000 would not be permitted to stand."

Since the Court of Special Appeals affirmed the $350,000 judgment, it did not address Caldor's conditional cross-appeal.

Thereafter, Bowden filed in this Court a petition for a writ of certiorari, which we granted. *Bowden v. Caldor*, 343 Md. 745, 684 A.2d 836 (1996).

Bowden argues that the Court of Special Appeals erroneously construed this Court's earlier opinion and mandate as precluding a punitive damages award on retrial that would exceed $350,000. Bowden further asserts that the circuit court, in reviewing the jury's award of punitive damages, erred by drawing an analogy to the principle of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Bowden contends that the *Pearce* principle, based on the danger of a chilling effect on the right to appeal, applies

only in criminal cases and has no application to civil cases of this nature. According to Bowden, a proper court review of the jury's $9 million dollar punitive damages award against Caldor would lead to the conclusion that the award was not excessive. He requests that this Court order that the $9 million award be reinstated. Bowden also claims that the circuit court's reduction of the jury's award, without giving him the option of a new trial on punitive damages, is improper and violates his right to a jury trial under the second paragraph of Article 23 of the Maryland Declaration of Rights.[5] Bowden insists that a court may not, on the ground of excessiveness, reduce a jury's award of punitive damages in favor of a plaintiff without affording the plaintiff the option of a new jury trial. Consequently, under Bowden's view, if we remand the case for the circuit court to conduct a new review of the $9 million punitive damages award, a remittitur must be accompanied by the option to Bowden of a new trial.

Caldor, on the other hand, defends both the ruling of the Court of Special Appeals and the ruling of the circuit court. Furthermore Caldor contends that if a trial judge, after reviewing a jury's award of punitive damages in favor of a plaintiff, concludes that the award is excessive, the judge may reduce the award without granting the plaintiff the option of a new trial on punitive damages. Thus, Caldor requests that the judgment of the circuit court be affirmed. Alternatively, Caldor contends that if this Court holds that the circuit court committed error, then we should order that the case be remanded to the circuit court for that court to review the $9 million award under the proper standards. In addition, Caldor argues that, if we do not affirm the judgment below, Caldor's "conditional cross-appeal" should be considered.[6]

---

5. The second paragraph of Article 23 states:

> "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved."

6. The matter of Caldor's conditional cross-appeal can be disposed of quickly. Caldor asserted in the Court of Special Appeals that a new

## II.

■ Both the Court of Special Appeals and the circuit court erred in holding that, because of the earlier appeal, the punitive damages award after a new trial could not exceed $350,000.

Although our prior opinion and mandate directed a new trial solely on punitive damages, nothing in that opinion or mandate indicated that the $350,000 in punitive damages awarded by the first jury constituted a "cap" on the amount of punitive damages that could be awarded by the second jury. The final sentence of our prior opinion stated that "we are remanding the case for a new determination of punitive damages," and our mandate simply directed "further proceedings consistent with this opinion...." *Caldor v. Bowden, supra,* 330 Md. at 664, 625 A.2d at 974. The fact that we found error prejudicial to Caldor, in connection with the $350,000 punitive damages award at the first trial, does not mean that the punitive damages award after a second trial must be $350,000 or less. The evidence at the second trial might be materially different.

■ Turning to the circuit court's decision, no principle analogous to that set forth in *North Carolina v. Pearce, supra,* is applicable in civil tort actions for money damages. In *North Carolina v. Pearce,* the Supreme Court held that in a

---

punitive damages trial is required in this case because the procedures employed in the trial below were fundamentally unfair. Specifically, Caldor contended that the circuit court's decision to have the transcribed testimony of all witnesses from the first trial read to the new jury, rather than allowing "live" testimony, unduly constrained the presentation of the evidence to the new jury and prevented the proper calculation of punitive damages. A review of the record plainly demonstrates that this contention is without merit.

In contrast to Caldor's objections in the Court of Special Appeals, it failed to object or take issue with the procedures employed by the circuit court during the second punitive damages trial. Moreover, the record shows that Caldor was permitted to introduce whatever relevant additional testimony it wished to introduce. In fact, Caldor's complaints in the circuit court with the procedures employed in the second trial concerned the trial court's refusal to locate and re-impanel the jury from the first trial or to inform the new jury of the prior punitive damages award. The circuit court properly denied both requests.

**20**

*criminal* case, the Due Process Clause of the Fourteenth Amendment bars a sentencing authority, usually a judge, from subjecting a defendant to a harsher sentence, after a retrial following the defendant's successful appeal, than the sentence which had been imposed at the first trial, unless the defendant committed identifiable acts of misconduct subsequent to the original sentencing proceeding. 395 U.S. at 723–726, 89 S.Ct. at 2079–2081, 23 L.Ed.2d at 668–670. According to the Supreme Court, a criminal defendant's apprehension of a greater sentence if he successfully appeals would chill the statutory right of appeal. 395 U.S. at 724–725, 89 S.Ct. at 2080, 23 L.Ed.2d at 668–669. No decision of this Court, of the Supreme Court, or of the highest court in any state, applying this rationale to a civil tort action for money damages, has been called to our attention.

When an appellate court reverses a judgment for compensatory damages, or punitive damages, or both, and remands for a new trial without expressly limiting the scope of that new trial, the evidence at the new trial and the legal standards applied at the new trial determine whether there should be an award of damages and, if so, the amount of that award. *See, e.g., Middle States v. Thomas,* 340 Md. 699, 703–704, 668 A.2d 5, 7–8 (1995), and cases there cited; *Owens–Illinois v. Zenobia,* 325 Md. 420, 472, 601 A.2d 633, 659 (1992). The "effect of the granting of a new trial is to set aside the [judgment] and leave the cause in the same condition as if no judgment had been entered." *Tiller v. Elfenbein,* 205 Md. 14, 19, 106 A.2d 42, 44 (1954). *See Cook v. Toney,* 245 Md. 42, 49, 224 A.2d 857, 861 (1966); *Snyder v. Cearfoss,* 186 Md. 360, 367, 46 A.2d 607, 610 (1946).

This Court's recent opinion in *Middle States v. Thomas, supra,* 340 Md. 699, 668 A.2d 5, is instructive. The Court of Special Appeals in that case reversed judgments on two tort counts and remanded for a new trial. Because, in the view of the Court of Special Appeals, the evidence at the first trial was sufficient for the issue of punitive damages to be submitted to the jury, the Court of Special Appeals directed that, at

the new trial, the issue of punitive damages be submitted to the jury. This Court vacated the directive concerning the submission to the jury of the claim for punitive damages, pointing out that what happened at the prior trial should not govern what should happen at the new trial. We explained as follows (340 Md. at 703–704, 668 A.2d at 7–8):

"When an appellate court remands a tort case for a new trial on, *inter alia*, punitive damages, the question of whether the claim for punitive damages should be submitted to the jury depends upon the evidence at that new trial and not upon the evidence at the prior trial.

* * *

"[T]he parties at a new trial on punitive damages are not limited to the same evidence produced at the prior trial. The evidence produced at the new trial may turn out to be significantly different from the evidence that was introduced at the earlier trial. Simply because an appellate court believes that the evidence at the prior trial was sufficient to generate a jury issue on punitive damages does not mean that the evidence at the trial to be held in the future will be sufficient."

*See also Owens–Illinois v. Zenobia, supra,* 325 Md. at 472, 601 A.2d at 659.

In the case at bar, the initial $350,000 punitive damages award was eliminated when it was reversed by this Court. Any award of punitive damages, and the amount of any such award, was totally dependent upon the evidence introduced at the new trial, upon Maryland law concerning punitive damages in tort actions of this nature, and upon the judgment of the jury at the new trial.

### III.

■ "[L]ike any award of damages in a tort case, the amount of punitive damages awarded by a jury is reviewable by the trial court for excessiveness." *Ellerin v. Fairfax Savings,* 337 Md. 216, 242, 652 A.2d 1117, 1130 (1995). The

circuit court was correct in undertaking a review of the $9 million jury award of punitive damages. As pointed out in Part II above, however, the circuit court erred in applying a principle analogous to that set forth in *North Carolina v. Pearce, supra.* Consequently, the case must be remanded to the circuit court for a new review of the punitive damages award. This requires us to consider what legal principles or factors should guide a trial judge in reviewing for excessiveness a jury's punitive damages award, and, upon a determination that the award is excessive, in arriving at the amount of the reduction.

### A.

Before reviewing a punitive damages award for excessiveness, however, a trial judge should first consider any arguments made by the parties in post-verdict motions [7] relating to the allowability of punitive damages. Under Maryland law, punitive damages are allowable only in tort actions. *Middle States v. Thomas, supra,* 340 Md. at 702, 668 A.2d at 7; *Alexander & Alexander Inc. v. B. Dixon Evander & Assoc., Inc.,* 336 Md. 635, 645–646 n. 8, 650 A.2d 260, 265 n. 8 (1994); *K & K Management v. Lee,* 316 Md. 137, 169–170, 557 A.2d 965, 981 (1989). Moreover, for a plaintiff to recover punitive damages, the complaint must contain a specific claim for punitive damages and "must set forth facts that, if proven true, would entitle the plaintiff to punitive damages." *Scott v. Jenkins,* 345 Md. 21, 25, 690 A.2d 1000, 1001 (1997).

We have stated that the "purpose of punitive damages is . . . to punish the defendant for egregiously bad conduct toward the plaintiff, [and] also to deter the defendant and others contemplating similar behavior." *Owens–Corning v. Garrett,* 343 Md. 500, 537–538, 682 A.2d 1143, 1161 (1996). "Awarding punitive damages based upon the heinous nature of the defendant's tortious conduct furthers the historical purposes of punitive damages—punishment and deterrence."

---

**7.** *See* Maryland Rules 2–532, 2–533, 2–534, and 2–535.

*Owens–Illinois v. Zenobia, supra,* 325 Md. at 454, 601 A.2d at 649–650.

■■■ Consequently, " 'with respect to both intentional and non-intentional torts, ... an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.' " *Scott v. Jenkins, supra,* 345 Md. at 33, 690 A.2d at 1006, quoting *Montgomery Ward v. Wilson,* 339 Md. 701, 733, 664 A.2d 916, 932 (1995). *See, e.g., Ellerin v. Fairfax Savings, supra,* 337 Md. at 228–229, 652 A.2d at 1123 ("Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing and deliberate wrongdoing. * * * [P]unitive damages may only be awarded ... when 'the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud,' " quoting *Owens–Illinois v. Zenobia, supra,* 325 Md. at 460, 601 A.2d at 652); *Komornik v. Sparks,* 331 Md. 720, 724–730, 629 A.2d 721, 723–726 (1993); *Adams v. Coates,* 331 Md. 1, 13, 626 A.2d 36, 42 (1993). Punitive damages are not recoverable based upon any theory of "implied malice," either in the sense of gross negligence or in the sense of inferring malice from an element of the tort. *Montgomery Ward v. Wilson, supra,* 339 Md. at 728–729 n. 5, 734–736, 664 A.2d at 929–930 n. 5, 932–933.

■■■ Furthermore, not all of the forms of "actual malice" are pertinent to every type of tort action. For example, in a defamation action, punitive damages are not recoverable based upon ill will, spite, or an intent to injure; instead, to recover punitive damages, the plaintiff must establish that the defamatory falsehood was made with actual knowledge that it was false. *See LeMarc's Management Corp. v. Valentin,* 349 Md. 645, 709 A.2d 1222 (1998); *Telnikoff v. Matusevitch,* 347 Md. 561, 594–595, 702 A.2d 230, 246–247 (1997). *See also Marchesi v. Franchino,* 283 Md. 131, 138–139, 387 A.2d 1129, 1133 (1978); *General Motors Corp. v. Piskor,* 277 Md. 165, 174–175, 352 A.2d 810, 816–817 (1976); *Jacron Sales Co. v.*

**24**

*Sindorf,* 276 Md. 580, 601, 350 A.2d 688, 700 (1976). Similarly, in an action of deceit, punitive damages are allowable only where it is proven that the defendant "knows that his representation is false;" a recovery in deceit based upon the defendant's " 'reckless disregard' or 'reckless indifference' concerning the truth of the representation falls short of the mens rea which is required to support an award of punitive damages." *Ellerin v. Fairfax Savings, supra,* 337 Md. at 235, 652 A.2d at 1126. In a malicious prosecution action, the form of "actual malice" which must be established for the recovery of punitive damages "consists of an improper or wrongful motive in causing the initiation of criminal proceedings against the plaintiff." *Montgomery Ward v. Wilson, supra,* 339 Md. at 734, 664 A.2d at 932. For punitive damages to be recoverable in a products liability action, the "plaintiff must show that the defendant *actually* knew of the defect and of the danger of the product at the time the product left the defendant's possession or control," and "the plaintiff is required to show that, armed with this actual knowledge, the defendant consciously or deliberately disregarded the potential harm to consumers." *Owens–Illinois v. Zenobia, supra,* 325 Md. at 462–463, 601 A.2d at 653–654. *See also, e.g., ACandS v. Asner,* 344 Md. 155, 182–186, 686 A.2d 250, 263–265 (1996); *Owens–Corning v. Garrett, supra,* 343 Md. at 537–540, 682 A.2d at 1161–1162; *ACandS v. Godwin,* 340 Md. 334, 358–362, 667 A.2d 116, 127–129 (1995), and cases there cited; *U.S. Gypsum v. Baltimore,* 336 Md. 145, 187–188, 647 A.2d 405, 426 (1994).

Moreover, "a plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages." *Owens–Illinois v. Zenobia, supra,* 325 Md. at 469, 601 A.2d at 657. As this Court explained in the *Zenobia* case,

"[u]se of a clear and convincing standard of proof will help to insure that punitive damages are properly awarded. We hold that the heightened standard is appropriate in the assessment of punitive damages because of their penal nature and potential for debilitating harm." *Ibid.*

*See also, e.g., Scott v. Jenkins, supra,* 345 Md. at 33, 690 A.2d at 1005; *ACandS v. Asner, supra,* 344 Md. at 184, 686 A.2d at 264; *Owens–Corning v. Garrett, supra,* 343 Md. at 540, 682 A.2d at 1162; *ACandS v. Godwin, supra,* 340 Md. at 359, 667 A.2d at 128.

In addition, there must be an award of compensatory damages for a particular tort in order for the plaintiff to receive an award of punitive damages based upon that tort. *Caldor v. Bowden, supra,* 330 Md. at 662–663, 625 A.2d at 973–974, and cases there cited. Finally, a plaintiff has no right or entitlement to punitive damages under Maryland law. "[T]he trier of fact has discretion to deny punitive damages even where the record otherwise would support their award." *Adams v. Coates, supra,* 331 Md. at 15, 626 A.2d at 43, and authorities there cited.

### B.

As previously mentioned, in a tort case where punitive damages are allowable, the amount of punitive damages awarded by the trier of fact is reviewable by the court for excessiveness. *Ellerin v. Fairfax Savings, supra,* 337 Md. at 242, 652 A.2d at 1130.[8] Furthermore, judicial review of punitive damages awards is a requirement of procedural due process. *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994).[9] We now turn to the legal principles or considerations which should guide a trial court in

---

**8.** Because there is no right or entitlement to an award of punitive damages, and because a trier of fact is not required in any case to award punitive damages, there is no post verdict review on the ground that the amount of the punitive damages award was inadequate.

**9.** Earlier, in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 15, 111 S.Ct. 1032, 1042, 113 L.Ed.2d 1, 18 (1991), the Supreme Court observed:

"Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable."

determining if a punitive damages award is excessive and, if it is held to be excessive, the extent of the reduction.

■ Preliminarily, we note that the Supreme Court in recent years has held that the United States Constitution imposes limits upon awards of punitive damages, and that such an award cannot be " 'grossly excessive' in relation" to "the State's legitimate interests in punishment and deterrence." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809, 822 (1996). *See TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 453–454, 113 S.Ct. 2711, 2718, 125 L.Ed.2d 366, 376–377 (1993); *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1, 20 (1991). Obviously, in reviewing a punitive damages award for excessiveness, a trial court cannot properly leave in effect an award which exceeds constitutional limits.

Many courts, in setting forth legal principles or factors to guide trial court review of punitive damages awards, have focused primarily or exclusively upon perceived constitutional requirements. Some recent opinions of the Court of Special Appeals appear to fall into this category. *See, e.g., VF Corp. v. Wrexham Aviation,* 112 Md.App. 703, 728–737, 686 A.2d 647, 659–664 (1996), *cert. granted,* 346 Md. 28, 694 A.2d 951 (1997); *Market Tavern v. Bowen,* 92 Md.App. 622, 636–639, 610 A.2d 295, 302–304, *cert. denied,* 328 Md. 238, 614 A.2d 84 (1992). Nevertheless, this Court adheres to the settled principle that a court should decide constitutional issues only when necessary. *See, e.g., Telnikoff v. Matusevitch, supra,* 347 Md. at 578–579 n. 15, 702 A.2d at 239 n. 15; *Professional Nurses v. Dimensions Health Corp.,* 346 Md. 132, 138–139, 695 A.2d 158, 161 (1997); *Insurance Commissioner v. Equitable,* 339 Md. 596, 614, 664 A.2d 862, 871 (1995). Consequently, the legal principles discussed below, applicable to judicial review of punitive damages awards for excessiveness, are set forth as principles of Maryland common law. Although some of these principles may be the same as requirements imposed by other courts as a matter of constitutional law, we have no reason at

this time to consider minimum constitutional requirements in this area.

Moreover, some of the principles set forth below have a foundation in prior Maryland case law, whereas others do not. Nonetheless, as often pointed out, this Court has authority under the Maryland Constitution to change the common law. *Telnikoff v. Matusevitch, supra,* 347 Md. at 593 n. 29, 702 A.2d at 246 n. 29; *Owens–Illinois v. Zenobia, supra,* 325 Md. at 469–470, 601 A.2d at 657–658, and cases there collected.

### (1)

The most important legal rule in this area, applicable to every punitive damages award, is that the amount of punitive damages "must not be disproportionate to the gravity of the defendant's wrong." *Ellerin v. Fairfax Savings, supra,* 337 Md. at 242, 652 A.2d at 1129–1130. *See, e.g., Embrey v. Holly,* 293 Md. 128, 141, 442 A.2d 966, 973 (1982) ("punitive damages ... must relate to the degree of culpability"); *Schloss v. Silverman,* 172 Md. 632, 644, 192 A. 343, 348 (1937) (stating, with regard to punitive damages, that "the 'punishment [must] fit the crime' "); *Moore v. Schultz,* 31 Md. 418, 424 (1869) (punitive damages "should not be disproportioned to the enormity of the case"). *See also BMW of North America, Inc. v. Gore, supra,* 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826 ("Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct").

Furthermore, simply because the defendant has engaged in some "heinous" or "egregiously bad conduct" does not necessarily justify a large award of punitive damages. Under Maryland law, engagement in such conduct is a prerequisite for *any* award of punitive damages. *Owens–Corning v. Garrett, supra,* 343 Md. at 537–538, 682 A.2d at 1161; *Owens–Illinois v. Zenobia, supra,* 325 Md. at 454, 601 A.2d at 649–650. Accordingly, in determining whether the amount of the award is disproportionate to the gravity of the defendant's conduct, it is the degree of heinousness which is important.

*See BMW of North America, Inc. v. Gore, supra,* 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826 ("some wrongs are more blameworthy than others").

### (2)

■■ A second very important principle, long recognized under Maryland law, is that the amount of punitive damages "should not be disproportionate to . . . the defendant's ability to pay." *Ellerin v. Fairfax Savings, supra,* 337 Md. at 242, 652 A.2d at 1130. *See Embrey v. Holly, supra,* 293 Md. at 141–142, 442 A.2d at 973 ("punitive damages . . . must relate to the . . . ability to pay"); *Heinze v. Murphy,* 180 Md. 423, 431, 24 A.2d 917, 921 (1942) (" 'the pecuniary circumstances of the defendant are proper to be considered,' " quoting *Sloan v. Edwards,* 61 Md. 89, 101 (1883)). The purpose of punitive damages is not to bankrupt or impoverish a defendant. *Fraidin v. Weitzman,* 93 Md.App. 168, 212, 611 A.2d 1046, 1068 (1992), *cert. denied,* 329 Md. 109, 617 A.2d 1055 (1993) ("When a punitive damage award consumes a defendant's total wealth, it has ceased to serve the societal goal of punishment. A defendant need not be financially destroyed in order to be punished"); *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 941 (D.C.App.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997) ("the amount of [punitive] damages should be . . . not so great as to exceed the boundaries of punishment and lead to bankruptcy"). Therefore, as numerous cases have made clear, a defendant's ability to pay is "a limiting factor which must be considered by the . . . trial court upon its review of the jury's award." *Fraidin v. Weitzman, supra,* 93 Md.App. at 212–215, 611 A.2d at 1068–1069, and cases there discussed. *See also Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 110 (4th Cir.1991).

■■ On the other hand, merely because a defendant may be able to pay a very large award of punitive damages, without jeopardizing the defendant's financial position, does not justify an award which is disproportionate to the heinousness of the defendant's conduct. As the Supreme Court of Alabama stated in *BMW of North America, Inc. v. Gore,* 701

So.2d 507, 514 (Ala.1997), following a remand from the Supreme Court of the United States,

"[i]t is clear that a punitive damages award of $2 million would not have a devastating impact upon BMW's financial position. However, where a defendant has not committed an act that would warrant a large punitive damages award, such an award should not be upheld upon judicial review merely because the defendant has the ability to pay it."

### (3)

Since one of the purposes of punitive damages is to deter the defendant from engaging in the type of conduct forming the basis for the award, the deterrence value of the amount awarded by the jury, under all of the circumstances of the case, is relevant. Thus, in a products liability case, *ACandS v. Godwin, supra,* 340 Md. at 362, 667 A.2d at 129, with regard to punitive damages awards against sellers of asbestos products, Judge Rodowsky for the Court observed:

"In the case *sub judice* deterrence is ... less a factor inasmuch as the three defendants involved with the punitive damages issues have not sold asbestos products for more than twenty years."

A defendant's taking of remedial or corrective action, promptly after the misconduct giving rise to the award of punitive damages, obviously should be a mitigating factor. *Bennett v. Owens–Corning Fiberglas Corp.,* 896 S.W.2d 464, 468 (Mo. 1995). On the other hand, repeated or frequent misconduct of the same nature, misconduct of long duration, attempts to conceal or cover-up the misconduct, failure to take corrective action, and similar circumstances, support the deterrence value of a significant award. *See, e.g., Scheufler v. General Host Corp.,* 126 F.3d 1261, 1271 (10th Cir.1997); *BMW of North America, Inc. v. Gore, supra,* 701 So.2d at 512; *Hyatt Regency v. Winston & Strawn,* 184 Ariz. 120, 134, 907 P.2d 506, 520 (1995), *cert. denied,* 517 U.S. 1234, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Call v. Heard,* 925 S.W.2d 840, 849 (Mo.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 716 (1997); *Gamble v. Stevenson,* 305 S.C. 104, 111–112, 406 S.E.2d 350,

354 (1991). *See also BMW of North America, Inc. v. Gore, supra,* 517 U.S. at 584–585, 116 S.Ct. at 1603, 134 L.Ed.2d at 832 ("In the absence of a history of noncompliance with known statutory requirements, there is no basis for assuming that a more modest sanction would not have been sufficient to motivate" proper conduct by the defendant).

### (4)

In *Ellerin v. Fairfax Savings, supra,* 337 Md. at 242–243 n. 13, 652 A.2d at 1130 n. 13, this Court noted as follows:

"As stated by the Court in *Embrey v. Holly, supra,* 293 Md. at 142, 442 A.2d at 973, '[p]unitive damages, in essence, represent a civil fine....' In this connection, it is noteworthy that the largest maximum fine prescribed by the Maryland General Assembly for any single criminal offense is $1,000,000.00 under the drug kingpin statute, Maryland Code (1957, 1992 Repl.Vol., 1994 Cum.Supp.), Art. 27, § 286(g)(2)(ii). The greatest maximum fine for a so-called 'commercial' crime is $500,000.00 under the Maryland antitrust statute, Code (1975, 1990 Repl.Vol., 1994 Cum.Supp.), § 11–212 of the Commercial Law Article.

\* \* \*

"There are other pertinent considerations in fixing an amount of punitive damages, and we do not suggest that criminal monetary penalties should provide a cap for punitive damage awards. Nonetheless, in determining whether an award of punitive damages is proportionate to the defendant's misconduct, a court may consider, *inter alia,* the legislative policy reflected in statutes setting criminal fines."

More recently the Supreme Court of the United States made a similar point (*BMW of North America, Inc. v. Gore, supra,* 517 U.S. at 583, 116 S.Ct. at 1603, 134 L.Ed.2d at 831):

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness. As Justice O'Connor has correctly observed, a reviewing court

engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.' *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. [257] 301, 109 S.Ct. 2909 [2934], 106 L.Ed.2d 219 [(1989)] (O'Connor, J., concurring in part and dissenting in part)."

Under some circumstances, the maximum criminal fine for comparable conduct should not be given very much weight in reviewing a punitive damages award for excessiveness. There are many serious criminal offenses chiefly aimed at individuals, rather than corporate entities, where the principal sanction is imprisonment, and the monetary penalty is relatively small. In this situation, the criminal fine for similar misconduct is not very pertinent in reviewing an award of punitive damages. In other situations, however, the maximum criminal or civil fine for similar conduct may be quite relevant. For example, if the defendant's malicious and wrongful conduct giving rise to the punitive damages award was the same as or similar to misconduct proscribed by the antitrust laws, the criminal and civil penalties under those laws have a great deal of relevance. Moreover, when a punitive damages award is several times higher than the largest criminal fine or civil penalty prescribed by the Legislature for *any* offense or misconduct, the award should be strictly scrutinized. *See BMW of North America, Inc. v. Gore*, 517 U.S. at 583–584 n. 38, 116 S.Ct. at 1603 n. 38, 134 L.Ed.2d at 831 n. 38.

(5)

Another appropriate consideration in judicially reviewing an award of punitive damages is to compare the award with other final punitive damages awards in the jurisdiction, and particularly with awards in somewhat comparable cases. *See, e.g., BMW of North America, Inc. v. Gore, supra*, 701 So.2d at 515 ("For guidance in determining the amount of punitive damages that would be proper, we have looked to comparable cases"). *See also Pacific Mutual Life Insurance Co. v. Haslip, supra*, 499 U.S. at 20–21, 111 S.Ct. at 1045, 113

L.Ed.2d at 21 (pointing to judicial review "undertak[ing] a comparative analysis" as an "additional check on the jury's . . . discretion"); *Edwards v. Armstrong World Industries, Inc.,* 911 F.2d 1151, 1154 (5th Cir.1990).

In *Alexander & Alexander Inc. v. B. Dixon Evander & Assoc., Inc.,* 88 Md.App. 672, 720, 596 A.2d 687, 710–711 (1991), *cert. denied,* 326 Md. 435, 605 A.2d 137 (1992), Chief Judge Wilner for the Court of Special Appeals, in vacating an extremely large punitive damages award, stated:

> "On this record, we do not believe that a $12.5 million punitive award comports with [the law]. Although we cannot say with complete certainty that it is the largest punitive award rendered by a Maryland court, it is the largest, by far, of which we are aware. The nearest in amount was $7,500,000 rendered in *Potomac Electric v. Smith,* 79 Md. App. 591, 558 A.2d 768 (1989), and the nearest to that was $1,000,000, which we vacated in *Edmonds v. Murphy, supra,* 83 Md.App. 133, 573 A.2d 853. Most of the punitive awards to date have been well under $100,000; other than the award in *Potomac Electric,* the highest allowed to stand was $910,000 against Exxon Corporation in *Exxon Corp. v. Yarema,* 69 Md.App. 124, 516 A.2d 990 (1986).
>
> "[T]he $12.5 million allowed by the court [is] extraordinary in terms of Maryland history. . . ."

The cases in which punitive damages awards have been upheld by this Court are even more striking. Apparently the largest award of punitive damages which has ever been upheld by this Court was $700,000, and in that case the size of the award was not an issue before this Court. *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 617–618, 569 A.2d 693, 694–695 (1990). The next ten highest awards of punitive damages upheld by us seem to be as follows: $107,875 (*St. Luke Church v. Smith,* 318 Md. 337, 568 A.2d 35 (1990)); $100,000 each for two plaintiffs, based on two separate acts of fraud (*Nails v. S. & R.,* 334 Md. 398, 639 A.2d 660 (1994)); $82,000 (*Luppino v. Gray,* 336 Md. 194, 647 A.2d 429 (1994)); $50,000 (*Macklin v. Logan,* 334 Md. 287, 639 A.2d 112 (1994)); $40,000 (*Embrey v.*

*Holly, supra,* 293 Md. 128, 442 A.2d 966); $36,000 (*Drug Fair of Md., Inc. v. Smith,* 263 Md. 341, 283 A.2d 392 (1971)); $35,000 (*General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977)); $30,000 (*Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 261 A.2d 731 (1970)); $25,000 (*Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975)); $25,000 (*American Stores Co. v. Byrd,* 229 Md. 5, 181 A.2d 333 (1962)). Moreover, in most of these cases no argument was made that the punitive awards were excessive.

We recognize that the awards involved in the older cases cited above, if adjusted for inflation, would be larger in terms of present dollars. Nonetheless, a multi-million dollar award of punitive damages is entirely beyond the range of punitive damages awards previously upheld by this Court.

(6)

This Court in *Owens–Illinois v. Zenobia, supra,* 325 Md. at 473 n. 29, 601 A.2d at 659 n. 29, rejected an argument that the trial court should be required in every case to admit evidence, for a jury's consideration, of prior punitive damages awards against the same defendant "for the same 'course of conduct.'" It was argued that the existence of such other awards is a mitigating factor which, as a matter of "fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment," the jury is entitled to consider. In disagreeing with this contention, we pointed out that the proponents (*ibid.*)

> "make no distinction between those punitive damage awards that are pending on appeal, those that have been reversed and those that have been paid. If an award of punitive damages has in fact been satisfied, the evidence of the defendant's financial means might in some cases reflect that payment. Furthermore, the admission of prior punitive damage awards would require the trial court to conduct a complicated evidentiary proceeding to determine if the defendant had in fact satisfied the punitive judgment. We decline to impose this onerous burden on the trial court."

We continue to adhere to this holding in *Zenobia.* A trial court is not required in a punitive damages trial to allow evidence to be submitted to the jury concerning punitive damages awards for the same conduct in other cases against the defendant.

In a post-verdict proceeding before the trial judge concerning the alleged excessiveness of the award, however, we believe that evidence of other final and satisfied punitive damages awards against the same defendant for the same conduct may be considered by the trial judge as a factor. *See Pacific Mutual Life Insurance Co. v. Haslip, supra,* 499 U.S. at 22, 111 S.Ct. at 1045, 113 L.Ed.2d at 22 (approving the consideration of "the existence of other civil awards against the defendant for the same conduct" as something "to be taken in mitigation"); *Scheufler v. General Host Corp., supra,* 126 F.3d at 1272; *BMW of North America, Inc. v. Gore, supra,* 701 So.2d at 515; *Restatement (Second) of Torts,* § 908, comment (e), second paragraph (1979). See also the extensive discussion of this matter by the United States Court of Appeals for the Third Circuit in *Dunn v. HOVIC,* 1 F.3d 1371, 1385–1391 (3d Cir.1993).

On the other hand, evidence indicating that there have been no other such awards of punitive damages against the defendant for the same conduct is also admissible and, depending upon the circumstances, may have weight as a non-mitigating factor.

### (7)

When the total amount of punitive damages awarded against the defendant is based on separate torts, a pertinent consideration under Maryland case-law is whether the separate torts all grew out of a single occurrence or episode. *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 298 A.2d 16 (1972), like the instant case, involved a retail store's wrongful and malicious accusation of theft against the plaintiff, a young man, and the false arrest of the plaintiff. The jury found that the store's personnel were guilty of three torts, namely false arrest, slander, and assault and battery. There

were separate awards of compensatory damages for each of the three torts. In addition, the jury awarded $4,500 punitive damages for each of the three torts, so that the total amount of punitive damages awarded was $13,500. The trial judge left the awards intact. On appeal, this Court affirmed the judgment for compensatory damages but reduced the total amount of punitive damages awarded to $4,500. Since, in this Court's view, the three torts were all based on " 'an episode that was one continuous occurrence,' " the "jury [improperly] 'pyramided' the claims into a triple recovery of punitive damages," 267 Md. at 425, 298 A.2d at 27.

This principle of *Montgomery Ward & Co. v. Cliser, supra,* has been reaffirmed by us on several occasions. For example, in *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 76, 485 A.2d 663, 678 (1984), the Court stated:

"Turning to the matter of damages, the plaintiffs seek treble damages under the antitrust restraint of trade count and compensatory and punitive damages under the common law tort count. The tort count is based on alleged acts which are identical to some of the acts set forth in the statutory restraint of trade count. If the plaintiffs succeed in convincing the jury of the defendants' liability under these counts, an award of both treble damages and punitive damages would clearly be duplicative. An award of treble damages for antitrust violations embodies both punitive and compensatory damages. *See SuperTurf, Inc. v. Monsanto Co.,* 660 F.2d 1275, 1283 (8th Cir.1981); *Clark Oil Co. v. Phillips Petroleum Co.,* 148 F.2d 580, 582 (8th Cir.), *cert. denied,* 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437 (1945). This Court has previously held that three separate awards for punitive damages based on the same conduct were inappropriate. *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 424–425, 298 A.2d 16 (1972). Thus, the plaintiffs, if they succeed in proving their case against The Store, Ltd., and its officers, will have to choose between receiving treble damages for the antitrust violation or compensatory and punitive damages for the tort arising from some of the same acts."

*See also Nichols v. Wilson,* 296 Md. 154, 158–160, 460 A.2d 57, 60 (1983); *General Motors Corp. v. Piskor, supra,* 281 Md. at 629 n. 1, 381 A.2d at 17 n. 1.[10]

(8)

The plaintiff's reasonable costs and expenses resulting from the defendant's malicious and tortious conduct, including the expenses of the litigation, which are not covered by the award of compensatory damages, are matters which appropriately can be considered in judicially reviewing an award of punitive damages. *BMW of North America, Inc. v. Gore, supra,* 701 So.2d at 514; *Jonathan Woodner Co. v. Breeden, supra,* 665 A.2d at 941 n. 19; *Kunewa v. Joshua,* 83 Hawai'i 65, 74–77, 924 P.2d 559, 568–571 (App.1996), and cases there collected; *Newton v. Hornblower, Inc.,* 224 Kan. 506, 526, 582 P.2d 1136, 1151 (1978); *Restatement (Second) of Torts, supra,* § 914, comment (a), second paragraph.

In *St. Luke Church v. Smith, supra,* 318 Md. at 352–354, 568 A.2d at 42–43, this Court held that evidence of the amount of the plaintiff's reasonable attorney's fees was admissible and could be considered by a jury in determining the amount of punitive damages. We pointed out that such expenses "guide the jury by giving them the 'aid of one fairly definite factor which they may take into account in fixing the amount' of punitive damages." 318 Md. at 353, 568 A.2d at 42. The Court explained (318 Md. at 353–354, 568 A.2d at 43):

"When a jury determines that punitive damages are appropriate and has considered reasonable attorney's fees,

---

**10.** Where multiple counts are submitted to the jury on two or more of which the jury has discretion to impose punitive damages, the trial courts should consider instructing the jury to proceed in the following fashion. First, if the jury concludes that an award of punitive damages should be made, the appropriate total amount of that award should be decided. Second, once the jury has determined the appropriate total amount of punitive damages, and if the punitive damages are based on more than one count, the jury should apportion the total amount of punitive damages to the counts, on which the jury has found the defendant liable for compensatory damages, which involve conduct for which the jury has determined that punitive damages should also be awarded.

two seemingly disparate goals are satisfied. First, because the jury will be offered objective guidance in calculating the amount of its punitive award, punitive damages will be more accurately measured and the potential for abuse decreased. . . . Second, the plaintiff can be made truly whole in precisely those kinds of cases in which the defendant's wrongful conduct is found to be at its most flagrant, for only in such cases are punitive damages warranted. . . . Therefore, to aid the jury in calculating an amount of punitive damages that will deter a party from future wrongful conduct, evidence of reasonable attorney's fees may be considered by the jury whenever punitive damages are appropriate."

Similar reasoning is applicable to judicial review of a jury's award and to a judge's consideration of any other reasonable expenses which are not covered by the award of compensatory damages and which were incurred by the plaintiff as a result of the defendant's tortious and malicious conduct.

Like other factors which we have discussed, however, substantial expenses incurred by the plaintiff will not justify a punitive damages award which is disproportionate to the gravity of the defendant's tortious conduct or which is disproportionate to the defendant's ability to pay. *See St. Luke Church v. Smith, supra,* 318 Md. at 355–356, 568 A.2d at 44 (dissenting opinion); *BMW of North America, Inc. v. Gore, supra,* 701 So.2d at 514.

Moreover, we agree with the idea reflected in Judge Rodowsky's dissenting opinion in *St. Luke Church v. Smith, supra,* 318 Md. at 355, 568 A.2d at 44, joined by Chief Judge Murphy and Judge McAuliffe, that the matter of the plaintiff's uncompensated reasonable expenses should not be a factor simply to "enlarge" awards of punitive damages. In a case where the plaintiff has not incurred substantial uncompensated expenses as a result of the defendant's wrongful and malicious conduct, the expense factor will militate in favor of a smaller punitive award.

(9)

This Court, beginning with *Schaefer v. Miller*, 322 Md. 297, 311–332, 587 A.2d 491, 498–509 (1991) (opinion of Judges Eldridge, Cole and Chasanow), and *Owens–Illinois v. Zenobia, supra*, 325 Md. 420, 601 A.2d 633, and continuing through *Scott v. Jenkins, supra*, 345 Md. 21, 690 A.2d 1000, undertook an examination and revision of Maryland common law principles applicable to punitive damages. Prior to that time, in *D.C. Transit System v. Brooks*, 264 Md. 578, 588–590, 287 A.2d 251, 256–257 (1972), in upholding a $10,000 punitive damages award for false arrest when the compensatory damages award was $750, the Court rejected "authority from other jurisdictions relative to ratios that should exist between compensatory damage and exemplary damage awards." The Court took the position that there need be no relationship between punitive and compensatory damages awards.

Subsequently, however, in *Owens–Illinois v. Zenobia, supra*, 325 Md. at 472 n. 28, 601 A.2d at 658 n. 28, we indicated that whether "a punitive damages award [should] bear some relationship to the compensatory damages" was an open issue for "exploration . . . another day."

More recently, the United States Supreme Court has stated that "[t]he second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *BMW of North America, Inc. v. Gore, supra*, 517 U.S. at 580, 116 S.Ct. at 1601, 134 L.Ed.2d at 829. Equating "actual harm" with the compensatory damages award, the Supreme Court continued (*ibid.*): "The principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree." *See also, e.g., TXO Production Corp. v. Alliance Resources Corp., supra*, 509 U.S. at 459–460, 113 S.Ct. at 2721, 125 L.Ed.2d at 380–381; *Pacific Mutual Life Insurance Co. v. Haslip, supra*, 499 U.S. at 21–23, 111 S.Ct. at 1045–1046, 113 L.Ed.2d at 22–23; *Klein v. Grynberg*, 44 F.3d 1497, 1505 (10th Cir.), *cert. denied*, 516 U.S. 810, 116 S.Ct. 58, 133 L.Ed.2d 22 (1995); *King v. Armstrong World Industries, Inc.*, 906 F.2d

1022, 1030 (5th Cir.1990), *cert. denied,* 500 U.S. 942, 111 S.Ct. 2236, 114 L.Ed.2d 478 (1991); *BMW of North America, Inc. v. Gore, supra,* 701 So.2d at 513; *Cameron v. Beard,* 864 P.2d 538, 551 (Alaska 1993); *Wilson v. IBP, Inc.,* 558 N.W.2d 132, 147 (Iowa 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997); *Call v. Heard, supra,* 925 S.W.2d at 849; *Maurer v. Clausen Distributing Co.,* 275 Mont. 229, 234, 912 P.2d 195, 198 (1996); *Schaffer v. Edward D. Jones & Co.,* 552 N.W.2d 801, 810–811 (S.D.1996); *Crookston v. Fire Ins. Exchange,* 817 P.2d 789, 808, 811 (Utah 1991); *Vandevender v. Sheetz,* 200 W.Va. 591, 598–599, 490 S.E.2d 678, 685–686 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998); *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis.2d 158, 194, 557 N.W.2d 67, 82 (1996).

 Whether a punitive damages award bears a reasonable relationship to the compensatory damages awarded in the case, is today generally accepted as a factor to be considered in judicial review for excessiveness of a jury's punitive damages award. We agree that this should be a consideration when a court reviews an award of punitive damages for excessiveness.[11]

---

**11.** It is noteworthy that in some states where the matter is controlled by statutes, there are statutory provisions that the amount of a punitive damages award, where authorized, may not exceed three times the amount of the plaintiff's actual or compensatory damages. *See, e.g.,* Fla. Stat. Ann. § 768.73(1)(a) (West 1997) (in most civil actions, "the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages...."); Ill. Rev.Stat. Ch. 735, Para. 2–1115.05(a) (1997 Cum.Supp.), ("In all cases on account of bodily injury, or physical damage to property based on negligence, or product liability .... [t]he amount of punitive damages that may be awarded ... shall not exceed 3 times the amount [of] ... economic damages"); Ind.Code Ann. § 34–4–34–4 (West Cum.Supp. 1997) ("A punitive damage award may not [exceed] the greater of ... [t]hree times the amount of compensatory damages awarded in the action or [f]ifty thousand dollars"); Nev.Rev.Stat. Ann § 42.005(1)(a) (Michie 1996) ("Except as otherwise provided ... an award of ... punitive damages ... may not exceed [t]hree times the amount of compensatory damages awarded to the plaintiff ..."). (Cont.)

██ Nevertheless, there are situations in which little or no consideration should be given to the relationship which punitive damages awards bear to compensatory damages awards. For example, where the defendant engages in extremely heinous conduct having great potential for harm, but because of fortuitous circumstances the plaintiff does not suffer a great deal of compensatory harm, the amount of the compensatory damages award furnishes a poor guide to the amount of an appropriate punitive damages award. In this circumstance, the relationship of the punitive damages award to the potential

---

This three to one ratio corresponds to numerous statutes in Maryland and throughout the country, such as the Maryland antitrust statute, Code (1975, 1990 Repl.Vol., 1997 Supp.), § 11–209(b)(4) of the Commercial Law Article, authorizing treble damages as a civil penalty: *See also* Maryland Code (1975, 1990 Repl.Vol., 1997 Supp.), §§ 12–918 and 12–1018 of the Commercial Law Article (authorizing treble damages against "credit grantors" who knowingly violate the statute); Maryland Code (1992), § 6–509 of the Business Regulation Article (authorizing punitive damages "not exceeding 3 times the actual damages" for the willful noncompliance with the statutory provisions pertaining to charitable solicitations); Maryland Code (1975, 1990 Repl.Vol., 1997 Supp.), § 14–505 of the Commercial Law Article (prescribing treble damages against persons who willfully sell fine prints without disclosing certain information); Maryland Code (1982, 1994 Repl.Vol., 1997 Supp.), § 15–123(b)(1) of the Health–General Article (imposing treble damages against health care providers for fraudulently obtaining Medicaid overpayments from the state); Maryland Code (1991, 1997 Supp), § 3–605(a)(1) of the Labor & Employment Article (authorizing treble damages against a principal who fails to pay commissions due under a terminated contract to a sales representative); Maryland Code (1985, 1995 Repl.Vol.), § 11–205(b) of the State Finance and Procurement Article (stating that persons acting in collusion to defraud the state in connection with the procurement process are liable for damages "equal to 3 times the value of the loss" to the state); Maryland Code (1977, 1992 Repl.Vol.), § 21–10A–06(2) of the Transportation Article (stating that any person who improperly tows or removes a vehicle from a parking lot is liable to the owner of the vehicle for "triple the amount" paid to take repossession of the vehicle).

Although courts in cases not controlled by statutory provisions have not regularly drawn analogies to such treble damage statutes, nonetheless we believe that the three to one ratio frequently appearing in statutory provisions is some indication of public policy concerning the relationship of monetary punishments to actual damages. While this public policy may appropriately be considered along with other factors, we do not suggest that punitive damages awards in most cases must reflect this ratio.

harm that might have resulted is more important than the relationship to the actual compensatory award. *See, e.g., BMW of North America, Inc. v. Gore, supra,* 517 U.S. at 582, 116 S.Ct. at 1602, 134 L.Ed.2d at 831 ("low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages"); *TXO Production Corp. v. Alliance Resources Corp., supra,* 509 U.S. at 460, 113 S.Ct. at 2721–2722, 125 L.Ed.2d at 380–381 ("both State Supreme Courts and this Court have eschewed an approach that concentrates entirely on the relationship between actual and punitive damages. It is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred").

C.

As indicated before, not all of the above-summarized principles or factors are pertinent in every case involving court review of punitive damages awards. Furthermore, the above list is not intended to be exclusive or all-encompassing. Other principles may appropriately be applicable to judicial review of punitive damages awards under particular circumstances.

In addition, simply because a principle should be considered by the court in reviewing a punitive damages award for excessiveness does not mean that the same principle should give rise to an appropriate issue at the trial before the jury or an appropriate issue for a jury instruction. For example, the matters discussed in parts B(5) or B(6) above are not, in our view, appropriate issues for the trial before the jury; they would have the potential of distracting the jury over collateral issues.

D.

In light of the principles discussed above, we fully agree with the trial court that the $9,000,000 award of punitive

damages was excessive. Caldor's conduct towards the plaintiff in this case was highly reprehensible and fully warranted punitive damages. Viewing the evidence most favorably for the plaintiff, as the juries did, Caldor's officials, without any basis, accused a young man of theft, falsely imprisoned him for several hours, lied about the evidence which they allegedly possessed, would not allow the plaintiff to call his parents, coerced him to sign a false confession, falsely arrested him on the following day, and caused his juvenile prosecution without any evidence against him. Moreover, the juries likely and reasonably concluded that the Caldor officials involved in this matter were motivated by racial hatred.

As heinous as it was, however, Caldor's malicious and wrongful conduct was not life threatening or the type of conduct which would likely lead to permanent physical injuries. There was no evidence in the record that the plaintiff has suffered any serious lasting effects from the events. There was also no evidence that Caldor personnel had previously or have subsequently engaged in similar wrongful conduct.

The $9,000,000 punitive damages award is nine times higher than the greatest criminal fine authorized by the Maryland Legislature. It is about thirteen times higher than the largest punitive damages award ever upheld by this Court. It is one hundred and fifty times higher than the compensatory damages awarded in the case. Finally, although Caldor was liable for three separate torts, there was only one course of conduct. *Montgomery Ward & Co. v. Cliser, supra.*

The trial court did not err in finding that the $9,000,000 award was excessive or in substantially reducing the award. The court's only error, necessitating another trial court review, was the court's reliance on the principle of *North Carolina v. Pearce, supra.*

## IV.

The plaintiff Bowden contends that, under Article 23 of the

Maryland Declaration of Rights,[12] a court cannot reduce, on the ground of excessiveness, a jury's award of punitive damages without giving the plaintiff the option of a new jury trial on punitive damages. According to Bowden, even if the $9,000,000 punitive damages award were excessive, the circuit court erred in reducing the award without granting him the option of a new jury trial. Bowden insists that the circuit court's ruling violated his "right of trial by jury of all issues of fact in civil proceedings" guaranteed by Article 23 of the Declaration of Rights.

This Court has never discussed or decided this precise question with regard to an award of punitive damages. Similarly, the United States Supreme Court has not ruled on the issue under the Seventh Amendment to the United States Constitution.[13] Cases in the lower federal courts under the Seventh Amendment, and in other state courts under state constitutional provisions, appear to be divided on the issue.[14]

---

**12.** *See* footnote 5, *supra.*

**13.** The Seventh Amendment has no application to state court proceedings. *Gasperini v. Center For Humanities, Inc.,* 518 U.S. 415, 417–419, 116 S.Ct. 2211, 2215, 135 L.Ed.2d 659, 668 (1996); *Maryland Aggregates v. State,* 337 Md. 658, 681 n. 14, 655 A.2d 886, 898 n. 14, *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 856 (1995); *Attorney General v. Johnson,* 282 Md. 274, 309 n. 34, 385 A.2d 57, 77 n. 34, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60–61, 58 L.Ed.2d 97 (1978); *Bringe v. Collins,* 274 Md. 338, 341–345, 335 A.2d 670, 673–675, *application for stay denied,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 475 (1975).

**14.** *Compare, e.g., Shamblin's Ready Mix, Inc. v. Eaton Corp.,* 873 F.2d 736, 740–742 (1989), *overruled by Defender Industries v. Northwestern Mut. Life Ins.,* 938 F.2d 502 (4th Cir.1991); *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 207 (1st Cir.1987); *Douglas v. Metro Rental Services, Inc.,* 827 F.2d 252, 257 (7th Cir.1987); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1279 (7th Cir.1984); *Shimman v. Frank,* 625 F.2d 80, 102–104 (6th Cir.1980); *Guzman v. Western State Bank of Devils Lake,* 540 F.2d 948, 954 (8th Cir.1976); *Airheart v. Green,* 267 Ala. 689, 693, 104 So.2d 687, 690 (1958); *Byrd v. Dark,* 322 Ark. 640, 645, 911 S.W.2d 572, 574 (1995); *Reccko v. Criss Cadillac Co., Inc.,* 610 A.2d 542, 546 (R.I.1992); *with, e.g., Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634, 643 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997); *Morgan v. Woessner,* 997 F.2d 1244, 1258–1259 (9th Cir.1993), *cert. dismissed,* 510 U.S. 1033, 114

Even though the Seventh Amendment is not applicable to state Court proceedings,[15] some of the Supreme Court's opinions under that Amendment are instructive. The Seventh Amendment provides as follows:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

The Supreme Court has taken the position that, when a court reduces as excessive a jury's award of *compensatory* damages, the Seventh Amendment ordinarily requires that the plaintiff be given the option of a new trial. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 431–433, 116 S.Ct. 2211, 2222, 135 L.Ed.2d 659, 677–678 (1996); *Dimick v. Schiedt*, 293 U.S. 474, 480–487, 55 S.Ct. 296, 298–301, 79 L.Ed. 603, 608–611 (1935); *Kennon v. Gilmer*, 131 U.S. 22, 28–30, 9 S.Ct. 696, 698–699, 33 L.Ed. 110, 113–114 (1889).

Interestingly, the Supreme Court's position is not based upon the first clause of the Seventh Amendment which states that "the right of trial by jury shall be preserved," but is grounded upon the second clause which states that "no fact tried by a jury, shall be otherwise re-examined in any Court...." *Gasperini v. Center For Humanities, Inc.*, *supra*, 518 U.S. at 432, 116 S.Ct. at 2222, 135 L.Ed.2d at 677. The second paragraph of Article 23 of the Maryland Declaration of Rights, stating that the "right of trial by Jury of all issues of fact in civil proceedings ... shall be inviolably preserved," is similar to the first clause of the Seventh Amendment. The Maryland Constitution contains no provi-

---

S.Ct. 671, 126 L.Ed.2d 640 (1994); *Defender Industries v. Northwestern Mut. Life Ins.*, *supra*, 938 F.2d at 505–507; *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1391–1392 (7th Cir.1984); *Payne Pontiac v. Ratliff*, 178 Colo. 361, 364–365, 497 P.2d 997, 999 (1972); *Kang v. Harrington*, 59 Haw. 652, 664 n. 3, 587 P.2d 285, 293 n. 3 (1978); *SC Farm Bur. Mut. Ins. v. Love Chevrolet*, 324 S.C. 149, 478 S.E.2d 57, 59 (1996).

**15.** *See* footnote 13, *supra*.

sion similar to the second clause of the Seventh Amendment, which the Supreme Court has designated the " 're-examination' clause," *Gasperini*, 518 U.S. at 432–433, 116 S.Ct. at 2222, 135 L.Ed.2d at 677.

Although the Supreme Court has never decided whether, under the Seventh Amendment, a court's reduction of a punitive damages award for excessiveness must be accompanied by a new trial option, the Court has held, in an action for statutory civil monetary penalties where the Seventh Amendment grants the right of jury trial on the issue of liability, that the Amendment does not require that the jury also determine the amount of the penalties. *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

In *Gasperini v. Center For Humanities, Inc.*, *supra*, a diversity action involving a claim for compensatory damages under New York law, the Supreme Court held *inter alia* that the Seventh Amendment did not preclude a federal appellate court's review, under an abuse of discretion standard, of a federal trial court's refusal to set aside the jury's award as excessive. In dissenting, Justice Scalia, joined by two other justices, drew a sharp distinction between compensatory and punitive damages (*Gasperini*, 518 U.S. at 459, 116 S.Ct. at 2235, 135 L.Ed.2d at 693):

"Nor can any weight be assigned to our statement in *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989), seemingly approving appellate abuse-of-discretion review of denials of new trials where punitive damages are claimed to be excessive. *Browning–Ferris*, like *Grunenthal* and *Neese*, explicitly avoided the question that is before us today, see 492 U.S., at 279, n. 25, 109 S.Ct., at 2922, n. 25. Even more significantly, *Browning–Ferris* involved review of a jury's *punitive* damages award. Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, see, *e.g., [St. Louis, I M & S R Co. v.] Craft*, 237 U.S. [648] 661, 35 S.Ct. [704] 707 [59 L.Ed. 1160 (1915)], the level of punitive damages is not really a 'fact' 'tried' by the jury. In none of our cases

holding that the Reexamination Clause prevents federal appellate review of claims of excessive damages does it appear that the damages had a truly 'punitive' component."

Turning to this Court's decisions under the Maryland Constitution, as previously pointed out, we have never discussed or decided whether a court's reduction for excessiveness of a punitive damages award must, under Article 23 of the Declaration of Rights, be accompanied by a new trial option. In fact, this Court has never decided the comparable issue with regard to *compensatory* damages. We have observed that, under normal Maryland *practice*, a court's reduction of a compensatory damages award as excessive is ordinarily accompanied by a new trial option, and that this practice does not violate Article 23. *See, e.g., Conklin v. Schillinger,* 255 Md. 50, 64–66, 257 A.2d 187, 194 (1969); *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 223, 159 A.2d 823, 833 (1960); *Turner v. Wash. Sanitary Comm.,* 221 Md. 494, 501–503, 158 A.2d 125, 129–130 (1960). *See also Banegura v. Taylor,* 312 Md. 609, 624–625, 541 A.2d 969, 976–977 (1988). Nonetheless, we have never held that the new trial option is required, either with respect to punitive or compensatory damages.

Although not discussing the constitutional question, this Court has ordered the reduction of punitive damages awards, on the ground of excessiveness, without granting a new trial option. *Montgomery Ward & Co. v. Cliser, supra,* 267 Md. at 425, 298 A.2d at 27. *See also Heinze v. Murphy, supra,* 180 Md. at 434, 24 A.2d at 923. Moreover, we have held that when the law imposes a limitation or cap upon damages, Article 23 of the Declaration of Rights does not preclude a court from reducing the jury's award of damages to such limitation or cap. *Murphy v. Edmonds,* 325 Md. 342, 370–375, 601 A.2d 102, 116 (1992).

Assuming *arguendo* that, under Article 23 of the Declaration of Rights, a court ordinarily may not reduce, on the ground on the ground of excessiveness, a jury's *compensatory* damages award without giving the plaintiff the option of a new trial, it would not follow that the same limitation is applicable

to a jury's *punitive* damages award. As pointed out by Justice Scalia, *Gasperini v. Center for Humanities, Inc., supra,* 518 U.S. at 458–460, 116 S.Ct. at 2235, 135 L.Ed.2d at 693 (Scalia, J., dissenting), the measure of compensatory damages suffered is essentially "a question of historical or predictive fact," whereas "the level of punitive damages is not...." The factors limiting the size of punitive damages awards, discussed in part III of this opinion, are principles of law. The limits imposed upon awards of punitive damages, whether by Maryland common law or by federal constitutional law, are legal limits similar to statutory limitations or caps upon damages. *See Murphy v. Edmonds, supra,* 325 Md. at 371, 601 A.2d at 116, where this Court, in upholding a legal limitation upon noneconomic damages, stated (emphasis added):

> "As the wording of Article 23 itself indicates, the jury trial right in civil cases relates to 'issues of fact' in legal actions. *It does not extend to issues of law,* equitable issues, or matters which historically were resolved by the judge rather than the jury."

It is true that the limits imposed upon punitive damages involve the weighing of several legal principles, and thus are not as fixed as a statutory cap on a particular type of damages. Nevertheless the court, in applying legal principles to reduce a jury's punitive damages award, is performing a legal function and not acting as a second trier of fact. Although the function also involves the evidence in the case, it is similar to the legal function of granting a judgment notwithstanding a verdict.

■ Consequently, we hold that Article 23 of the Declaration of Rights does not require a court, when it reduces a punitive damages award for excessiveness, to give the plaintiff the option of a new trial. Although the court, in its discretion, may grant a new trial option, it is not required to do so.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE*

*THE PUNITIVE DAMAGES JUDGMENT OF THE CIR-
CUIT COURT FOR BALTIMORE CITY AND TO REMAND
THE CASE TO THAT COURT FOR FURTHER PROCEED-
INGS NOT INCONSISTENT WITH THIS OPINION.
COSTS IN THIS COURT AND IN THE COURT OF SPE-
CIAL APPEALS TO BE PAID BY RESPONDENT CAL-
DOR, INC.*

BELL, C.J., dissents and concurs.

BELL, Chief Judge, dissenting and concurring.

I am in total agreement with the majority opinion insofar as
it reverses the judgment of the trial court and the Court of
Special Appeals, both holding that the punitive damages
award in the second trial could not exceed the award in the
first trial. I agree that neither *North Carolina v. Pearce*, 395
U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), nor our opinion
and mandate in *Bowden v. Caldor*, 343 Md. 745, 684 A.2d 836
(1996) requires that result. Nor do I quarrel with the right of
the trial court to review a jury award for excessiveness or
even this Court's review of the trial court's decision on review
for abuse. My principal quarrel is with Part IV of the opinion,
permitting the remittitur of the award without giving the
plaintiff the option of a new trial. I am also concerned that
the list of factors enumerated by the majority is not complete.
Indeed, a factor that ought to be given considerable deference,
the decision of the jury rendered on proper instructions, is not
even mentioned. Moreover, the interpretation the majority
gives some of the factors it does identify to inform the decision
with regard to the amount of punitive damages is so restric-
tive as to unduly limit the jury in that decision or will insure
that the trial courts will be able to reassess the jury's determi-
nation under the guise of the excessiveness review.

I

In concluding that the trial court did not err in finding the
punitive damages award at issue excessive and in substantially
reducing it, the majority opined:

"As heinous as it was, however, Caldor's malicious and wrongful conduct was not life threatening or the type of conduct which would likely lead to permanent physical injuries. There was no evidence in the record that the plaintiff has suffered any serious lasting effects from the events. There was also no evidence that Caldor personnel had previously or have subsequently engaged in similar wrongful conduct.

"The $9,000,000 punitive damages award is nine times higher than the greatest criminal fine authorized by the Maryland Legislature. It is about thirteen times higher than the largest punitive damages award ever upheld by this Court. It is one hundred and fifty times higher than the compensatory damages awarded in the case. Finally, although Caldor was liable for three separate torts, there was only one course of conduct. *Montgomery Ward & Co. v. Cliser, supra.*"

[350 Md. at 42, 710 A.2d at 286].

While heinousness is an appropriate factor and it must bear a reasonable relationship to the amount of the damages awarded, I do not agree that to justify substantial punitive damages, even approaching those awarded in this case, the malicious and wrongful conduct must be life threatening or be such as would likely lead to permanent injuries. I note, in this regard, that no citation for that proposition has been provided.

The conduct in this case was extremely outrageous. It also was racist and very blatantly and unapologetically so. Just how bad the conduct was is indicated by the characterization of it in the majority opinion:

"Caldor's conduct towards the plaintiff in this case was highly reprehensible and fully warranted punitive damages. Viewing the evidence most favorably for the plaintiff, as the juries did, Caldor's officials, without any basis, accused a young man of theft, falsely imprisoned him for several hours, lied about the evidence which they allegedly possessed, would not allow the plaintiff to call his parents, coerced him to sign a false confession, falsely arrested him

on the following day, and caused his juvenile prosecution without any evidence against him. Moreover, the juries likely and reasonably concluded that the Caldor officials involved in this matter were motivated by racial hatred." [350 Md. at 41–42, 710 A.2d at 285]. The author of the majority opinion, in dissent, when this case was last in this Court was even more graphic when discussing the effect that the Caldor conduct had on the plaintiff:

"The incident greatly upset Samuel. He felt 'defaced.' people who had been friendly with him before the incident had seen him in handcuffs; several people refused to speak with Samuel after the incident. This, he said, 'hurt a lot.' His feelings were deep; he said that the hurt 'really sunk in.' After the incident, Samuel lost interest in the people and activities which he had enjoyed before. For example, according to Samuel's statements described in the psychologist's report, Samuel had 'previously ... been socially active, into sports, including the baseball team at his highschool and as having a very active life. He now stays by himself, goes to his room and shuts the door.... His life is much more involved in daydreaming rather than an actual participation....' He isolated himself from others because he was embarrassed by the incident and feared that other people would talk about him. Samuel worried that, even though he had been acquitted of any wrongdoing, he had lost some of the trust his parents had in him. He began to lose weight and had trouble sleeping. These feelings persisted for over a year. Finally, Samuel decided that he wanted to talk the situation over with a professional, to try and determine why he was still disturbed so long afterwards.

"Although by the time of trial Samuel had managed to work through most of his feelings, the incident still haunted him. When applying for jobs, he had to disclose on the applications that he had been arrested. Samuel aspires to become a police officer. When he applied to a law enforcement agency for employment, he was subjected to a polygraph test because of the arrest on his record."

*Caldor v. Bowden,* 330 Md. 632, 667, 625 A.2d 959, 975–976 (1993) (Eldridge, J., dissenting).

In my opinion, and certainly as far as the jury was concerned, this conduct was such as to require the strongest measure in the interest of deterrence. There is no contention that the jury was improperly instructed or that it acted out of bias or spite. What the verdict reflects is that the jury apparently understands very well the devastation that this conduct can have on a psyche, especially a young one, not yet hardened to the realities of life in this society. That is particularly the case when it is remembered that in this very society not very long ago, the type of conduct being punished in this case was acceptable conduct in many parts of the country, including Baltimore and the remainder of this State as well, and with devastating and often disastrous effects on its victims. I am far from satisfied that this kind of conduct should be insulated from very substantial punitive damages approaching those determined by the jury in this case to be adequate.

The majority continues in a direction begun in *Ellerin v. Fairfax Savings,* 337 Md. 216, 242–243 n. 13, 652 A.2d 1117, 1130 n. 13 (1995), equating punitive damages with civil fines. I, too, continue my protest of that approach. See my dissenting opinion in that case. 337 Md. at 243, 652 A.2d at 1130.

## II

The majority holds, "Article 23 of the Declaration of Rights [1] does not require a court, when it reduces a punitive

---

**1.** "Article 23. *Jury judges of law and fact; right of trial by jury in civil proceedings.*

"In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.

"The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved."

damages award for excessiveness, to give the plaintiff the option of a new jury trial." 350 Md. at 47–48, 710 A.2d at 288. Its reasoning to arrive at that holding is instructive. The Court correctly notes that, in *Gasperini v. Center For Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), the United States Supreme Court held that the Seventh Amendment[2] to the United States Constitution ordinarily requires the plaintiff be given a new trial option whenever the trial court reduces a jury's compensatory damages award on the basis that it was excessive. *Id.* at 432–433, 116 S.Ct. at 2222, 135 L.Ed.2d at 677–678. See also *Dimick v. Schiedt*, 293 U.S. 474, 480–487, 55 S.Ct. 296, 298–301, 79 L.Ed. 603, 608–611 (1935); *Kennon v. Gilmer*, 131 U.S. 22, 28–30, 9 S.Ct. 696, 698–699, 33 L.Ed. 110, 113–114 (1889). That holding, the majority points out, was premised on the second clause of the Seventh Amendment, which the Supreme Court has denominated the "re-examination" clause, *Gasperini* at 432–433, 116 S.Ct. at 2222, 135 L.Ed.2d at 677, rather than the first clause. The significance of that observation is revealed when the Majority then observes that, while Article 23 contains language, in the second paragraph, similar to the first clause of the Seventh Amendment, the Maryland Declaration of Rights contains no provision similar to the "re-examination" clause. 350 Md. at 44–45, 710 A.2d at 287. Then, acknowledging that the Supreme Court has not had the occasion to address the issue when punitive damages were at issue, the majority places heavy reliance on the dissenting opinion, joined by two other justices, the Chief Justice and Mr. Justice Thomas, in

---

In this past session of the General Assembly, the Legislature enacted House Bill 192, a proposed constitutional amendment, which the Governor signed. See Ch. 322, Laws of 1998. If it receives the approval of the citizenry in the November 1998 General Election, the amount in controversy requirement for a jury trial will be increased to ten thousand dollars.

2. The Seventh Amendment provides:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise examined in any Court of the United States, than according to the rules of the common law."

which Mr. Justice Scalia drew a sharp distinction between compensatory damages and punitive damages. *Id.* at 45–46, 710 A.2d at 287 (quoting *Gasperini,* 518 U.S. at 459, 116 S.Ct. at 2235, 135 L.Ed.2d at 693 (Scalia, J., dissenting)).

From the foregoing, the majority concludes:

"Assuming *arguendo* that, under Article 23 of the Declaration of Rights, a court ordinarily may not reduce, on the ground of excessiveness, a jury's *compensatory* damages award without giving the plaintiff the option of a new trial, it would not follow that the same limitation is applicable to a jury's *punitive* damages award. As pointed out by Justice Scalia, *Gasperini v. Center for Humanities, Inc., supra,* 518 U.S. at 459, 116 S.Ct. at 2235, 135 L.Ed.2d at 693 (Scalia, J., dissenting), the measure of compensatory damages suffered is essentially 'a question of historical or predictive fact,' whereas 'the level of punitive damages is not. . . .' The factors limiting the size of punitive damages awards, discussed in part III of this opinion, are principles of law. The limits imposed upon awards of punitive damages, whether by Maryland common law or by federal constitutional law, are legal limits similar to statutory limitations or caps upon damages. *See Murphy v. Edmonds, supra,* 325 Md. at 371, 601 A.2d at 116, where this Court, in upholding a legal limitation upon noneconomic damages, stated (emphasis added):

'As the wording of Article 23 itself indicates, the jury trial right in civil cases relates to " 'issues of fact" ' in legal actions. *It does not extend to issues of law,* equitable issues, or matters which historically were resolved by the judge rather than the jury.'

"It is true that the limits imposed upon punitive damages involve the weighing of several legal principles, and thus are not as fixed as a statutory cap on a particular type of damages. Nevertheless the court, in applying legal principles to reduce a jury's punitive damages award, is performing a legal function and not acting as a second trier of fact. Although the function also involves the evidence in the case,

it is similar to the legal function of granting a judgment notwithstanding a verdict."

350 Md. at 47, 710 A.2d at 288. With those conclusions, I totally disagree.

*Gasperini* was a diversity action in which the question presented involved "the standard a federal court uses to measure the alleged excessiveness of a jury's verdict in an action for [compensatory] damages based on state law." *Gasperini*, 518 U.S. at 422, 116 S.Ct. at 2217, 135 L.Ed.2d at 670. As the majority notes, the Supreme Court held *inter alia* that the Seventh Amendment did not preclude a federal appellate court's review, under an abuse of discretion standard, of a federal trial court's refusal to set aside as excessive a jury's award. More important, however, the Court directed the federal trial court to revisit its ruling on the new trial, using the state standard governing such matters. At issue were a New York statute, N.Y Civ. Prac. Law and Rules § 5501(c) (McKinney 1995), governing the review of money judgments alleged to be excessive and the effect on federal diversity jurisdiction cases when that law is applied to the review of judgments rendered by the federal court. See *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requiring that federal courts sitting in diversity apply state substantive law and federal procedural law. The New York statute, which the Court characterized as the codification of a new standard that requires closer court review than the previously used common law "shock the conscience" test, *Gasperini*, 518 U.S. at 429, 116 S.Ct. at 2220, 135 L.Ed.2d at 675, provided:

"The appellate division shall review questions of law and questions of fact on an appeal from a judgment or order of a court of original instance and on an appeal from an order of the supreme court a county court or an appellate term determining an appeal. In reviewing a money judgment in an action in which the itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipula-

tion is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation."

Addressing the appropriate standard for reviewing the federal trial court's denial of the appellee's motion for new trial, the Court "recognized that when New York substantive law governs a claim for relief, New York law and decisions guide the allowable damages." *Gasperini,* 518 U.S. at 437, 116 S.Ct. at 2224, 135 L.Ed.2d at 680. This is consistent with the Court's earlier recognition that "New York's 'deviates materially' standard . . . is outcome-affective in this sense: Would 'application of the [standard] . . . have so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would [unfairly discriminate against citizens of the forum State, or] be likely to cause a plaintiff to choose the federal court.?'" *Id.* at 428, 116 S.Ct. at 2220, 135 L.Ed.2d at 674, citing and quoting *Hanna v. Plumer,* 380 U.S. 460, 468, n. 9, 85 S.Ct. 1136, 1142, n. 9, 14 L.Ed.2d 8, n. 9 (1965). In the course of the discussion, the Court commented on "[a]n essential characteristic of the [federal-court] system." *Id.* at 431, 116 S.Ct. at 2221, 135 L.Ed.2d at 676, quoting *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953, 962 (1958). The *Byrd* court explained that characteristic as follows:

"The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury."

356 U.S. at 537, 78 S.Ct. at 901, 2 L.Ed.2d at 962. It was in this context that the *Gasperini* court addressed the second clause of the Seventh Amendment. Acknowledging that, in addition to the allocation of trial function, the Seventh Amendment also controls the allocation of the authority to review

verdicts, the Court noted the historical authority, described as "large," of federal judges to grant new trials. *Gasperini,* 518 U.S. at 433, 116 S.Ct. at 2222, 135 L.Ed.2d at 677. It recognized, on the other hand, that no such history underlay appellate review of a federal court's denial of a motion to set aside a jury's verdict as excessive. Nevertheless, after reviewing its cases presaging the result, see *Grunenthal v. Long Island R. Co.,* 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309, 313 (1968); *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219, 240, 241 (1989),[3] the Court held for the first time what had only been implicit, that "Nothing in the Seventh Amendment . . . precludes appellate review of the trial judge's denial of a motion to set aside [a jury verdict] as excessive." 518 U.S. at 436, 116 S.Ct. at 2224, 135 L.Ed.2d at 679, quoting *Grunenthal,* 393 U.S. at 164, 89 S.Ct. at 336, 21 L.Ed.2d at 316. (Justice Stewart dissenting).

It is significant, in my view, that the application of the second clause of the Seventh Amendment to the resolution of the issue in *Gasperini* did not, in any way, implicate, or diminish, the right to a jury trial on damages.[4] Indeed, the

---

**3.** The main issue in this case involved the application of the Eighth Amendment's excessive fines clause to punitive damages; however, the Court was also asked to address whether those damages were excessive as a matter of federal common law. It was in this context that the Court refused directly to review the award and commented:

"In a diversity action or any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law. . . .

"In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. The court of appeals should then review the district court's determination under an abuse-of-discretion standard."

*Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 278–279, 109 S.Ct. 2909, 2922–2923, 106 L.Ed.2d 219, 240–241 (1989).

**4.** This may explain the absence of a clause comparable to the second clause of the Seventh Amendment in the Maryland Constitution. Mary-

premise with which the Court started was that a jury trial was required to determine the amount, as opposed to the excessiveness, of the damages. And the majority of the *Gasperini* court, including one of the dissenting justices, Justice Stewart, had no occasion to consider whether there is a difference between the determination required to be made with respect to the measure of compensatory damages and that involved in evaluating the level of punitive damages. Nor am I convinced

land law has long been clear that trial courts may grant a new trial after a jury has rendered a verdict. In *Baltimore & Ohio Railroad Co. v. Brydon*, 65 Md. 198, 222, 3 A. 306 (1886), we stated on the subject: "By the immemorial practice of the Maryland courts, the jury has an unqualified right to form its judgment on the facts which the court determines to be legally sufficient, without any interference or control on the part of the Judge. After the verdict is rendered, the Judge who tried the case may set it aside and grant a new trial in his discretion, if justice so requires it."

Of course, they are also authorized to deny motions for new trials. See e.g., *Cong. School v. Roads Commission*, 218 Md. 236, 254, 146 A.2d 558 (1958); *Waters v. Waters*, 26 Md. 53, 73–74 (1866). Both the decision to grant a new trial and the decision to deny a new trial motion are addressed to the sound discretion of the trial court, *I.O.A. Leasing Corp. v. Merle Thomas Corp.*, 260 Md. 243, 249, 272 A.2d 1 (1971); *Leitch v. Anne Arundel County*, 248 Md. 611, 619, 237 A.2d 748 (1968); *Brinand v. Denzik*, 226 Md. 287, 292, 173 A.2d 203 (1961); *Leizear v. Butler*, 226 Md. 171, 178–79, 172 A.2d 518, 521–522 (1961); *Waters v. Waters*, 26 Md. at 73; *Walker v. Hall*, 34 Md.App. 571, 591, 369 A.2d 105 (1977); *Murphy v. Board of County Commissioners*, 13 Md.App. 497, 513, 284 A.2d 261 (1971), the exercise of which will not be reviewed on appeal, at least when the trial court has fairly exercised its discretion, *Kirsner v. State*, 296 Md. 567, 570, 463 A.2d 865, 867 (1983); *Martin v. Rossignol*, 226 Md. 363, 366–367, 174 A.2d 149 (1961); *Colter v. State*, 219 Md. 190, 191–192, 148 A.2d 561, 562 (1959); *Givner v. State*, 208 Md. 1, 7, 115 A.2d 714, 717 (1955); *Washington, B. & A. R.R. v. Kimmey*, 141 Md. 243, 250, 118 A. 648 (1922) *Walker v. Hall*, 34 Md.App. at 591, 369 A.2d 105; *Murphy*, 13 Md.App. at 513, 284 A.2d 261, and except under the most extraordinary or compelling circumstances, *A.S. Abell Company v. Skeen*, 265 Md. 53, 59, 288 A.2d 596 (1972); *Conklin v. Schillinger*, 255 Md. 50, 69, 257 A.2d 187, 196–197 (1969), *Walker v. Hall*, 34 Md.App. at 591, 369 A.2d 105; *Podolski v. Sibley*, 12 Md.App. 642, 647, 280 A.2d 294 (1971); *State, Use of Shipley v. Walker*, 230 Md. 133, 137, 186 A.2d 472 (1962), or except where some substantial right is denied. *Brinand v. Denzik*, 226 Md. at 293, 173 A.2d 203; *State v. Baltimore Transit Co.*, 177 Md. 451, 454, 9 A.2d 753 (1939). Thus, Maryland apparently has always allocated the authority, if it did not always encourage its exercise, of the appellate courts to review jury verdicts, including for excessiveness.

that the dichotomy drawn by Justice Scalia between the measure of compensatory damages and the level of punitive damages is all that helpful to the majority. What was at issue in *Gasperini*, it must be remembered, was the authority of the appellate court to review the denial of a motion for new trial in the face of allegations that the jury's verdict was excessive and under what standard. The portion of the Scalia dissent quoted in the majority opinion, [350 Md. at 45–46, 710 A.2d at 287], was offered to refute the *Gasperini* majority's conclusion that "appellate review for abuse of discretion is reconcilable with the Seventh Amendment." Viewed in this context, it is clear that Justice Scalia's concern was not with a jury determination of punitive damages, but rather the nature of the inquiry into the excessiveness of those damages. That would explain the use of the term, "measure" when discussing actual damages and the very different term, "level," when addressing punitive damages. In any event, unlike his statement that the measure of compensatory damages presents a question of historical or predictive fact, absolutely no support was offered for the proposition that the level of punitive damages is not a fact tried to a jury.

The majority's holding that a jury's punitive damages award may be reduced by a trial court without giving the plaintiff a new trial option rests on two premises: 1) the absence, in Article 23 of the Maryland Declaration of Rights or in the Maryland Constitution of a provision comparable to the second clause of the Seventh Amendment and 2) the distinction Justice Scalia drew in dissent between the measure of compensatory damages and the level of punitive damages.[5] As I

---

5. It is ironic indeed that the majority has to rely on Justice Scalia's dissent for support. Justice Scalia really did dissent, he would have affirmed the trial court's refusal to set aside, as against the weight of the evidence, the civil jury award, on the basis of "a longstanding and well-reasoned line of precedent that has for years prohibited federal appellate courts from reviewing [such] refusals." 518 U.S. at 448–449, 116 S.Ct. at 2230, 135 L.Ed.2d at 687. Thus, Justice Scalia goes much farther than I do. I have no doubt that Maryland precedent, even without a reexamination clause, *see* n. 4, permits, and has done so for years, review of jury verdicts for excessiveness. Justice Scalia and

have demonstrated, neither basis has merit.[6]

those justices who joined his dissent are adamant that the reexamination clause in the Seventh Amendment precludes such review:

"The Court's only suggestion as to what rationale might underlie approval of abuse-of-discretion review is to be found in a quotation from *Dagnello v. Long Island R. Co.*, 289 F.2d 797 [(2nd Cir.1961)], to the effect that review of denial of a new trial motion, if conducted under a sufficiently deferential standard, poses only 'a question of law.'... But that is not the test that the Seventh Amendment sets forth. Whether or not it is possible to characterize an appeal of a denial of new trial as raising a 'legal question,' it is not possible to review such a claim without engaging in a 'reexamin[ation]' of the 'facts tried by the jury' in a manner 'otherwise' than allowed at common law. Determining whether a particular award is excessive requires that one first determine the nature and extent of the harm—which undeniably requires reviewing the facts of the case. That the court's review also entails application of a legal standard (whether 'shocks the conscience,' 'deviates materially,' or some other) makes no difference, for what is necessarily also required is reexamination of facts found by the jury."
*Id.* at 460–461, 116 S.Ct. at 2236, 135 L.Ed.2d at 694.

**6.** The majority cites *Montgomery Ward & Co. v. Cliser*, 267 Md. 406, 425, 298 A.2d 16, 27 (1972) and *Heinze v. Murphy*, 180 Md. 423, 434, 24 A.2d 917, 923 (1942) as examples of cases in which this Court has ordered a reduction of punitive damage awards found to be excessive, without granting a new trial option. In *Cliser*, the trial court erred in not furnishing guidelines to the jury in its consideration of whether to award punitive damages for each of the three torts, with the result that the jury "pyramided" the claims into a triple recovery of punitive damages on the basis of an episode that was one continuous occurrence. Under those circumstances, we modified the judgment so that there was but one recovery of punitive damages, which correctly reflected the verdict of the jury. *Heinze* is an example of appellate factfinding, substituting, as it were, the appellate court's judgment for that of the jury:

"It may well be that a person may not be required to answer questions which would be to their disadvantage, but in so declining it is not at all necessary to assume an antagonistic attitude, and thereby invite the same conduct from an officer. The appellee is not entirely free of unbecoming conduct. It is not a trespass for an officer of the law to go upon another's premises in the line of his duty, although his conduct afterward may make it a trespass. The appellee, by his own conduct, was responsible, in some measure, for giving, as the officer thought, cause for his arrest.

"Under the facts of this case, it does not appear to us that there is sufficient evidence to find that the appellant acted wantonly, or with malice and ill will, and in accordance with the rules as above stated, a case justifying punitive damages has not been established.

The majority also finds solace in the existence of factors limiting the size of punitive damages. It points out that those limiting factors are principles of law, which, "whether imposed by Maryland common law or by federal constitutional law, are legal limits similar to statutory limitations or caps on damages." Although not as fixed and require the weighing of those legal principles that are applicable, the majority asserts that "[n]evertheless the court, in applying legal principles to reduce a jury's punitive damages award, is performing a legal function and not acting as a second trier of fact. Although the function also involves the evidence in the case, it is similar to the legal function of granting a judgment notwithstanding a verdict." [350 Md. at 47, 710 A.2d at 288].

To state that proposition does not make it so and, indeed, it is not so. To be sure, permitting the trial court to review the jury's verdict for excessiveness is consistent with Maryland law and, now, the Seventh Amendment. It is one thing to review a verdict for excessiveness, however, and quite another to determine what the verdict ought to be. The former may be akin to the granting of a motion for judgment notwithstanding the verdict, but the latter definitely is not. Reviewing a verdict for excessiveness is a threshold inquiry, involving the determination of whether, using the applicable principles, the award is within the confines of the applicable law. The motion for judgment notwithstanding the verdict, by testing

---

"A trespass may be committed from a mistaken notion of power, and from an honest motive to accomplish some good end. But while the law tolerates no abuse of power, yet, in morals and the eye of the law, there is a vast difference between the criminality of a person acting mistakenly, from a worthy motive, and one committing the same act from a wanton and malicious spirit, and with a corrupt and wicked design. Hence, where damages beyond compensation, to punish the party guilty of a wrongful act, are asked, the evidence must show wanton, or malicious motive, and it must be actual and not constructive or implied. . . .

"For the reasons above stated we find the damages allowed in this case to be excessive, and under the procedure authorized by the New General Rules of Practice and Procedure, Part III, 9(c), must modify the judgment as to the award of damages. The judgment shall be for $25 damages."

(Citations omitted).

the sufficiency of the evidence, *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 326, 389 A.2d 887, 904–905 (1978), serves a similar threshold function.

Determining the amount of punitive damages, like the determination of actual damages, is quite different from those functions, however. It is not simply a threshold evaluation. That process involves the finding of facts and the application to those facts of the principles identified by the trial court in its instructions.

The majority does not dispute that the determination of the amount of punitive damages is, in the first instance, a matter for the jury to decide. See *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 15–16, 111 S.Ct. 1032, 1042–1043, 113 L.Ed.2d 1, 18 (1991); *Browning–Ferris*, 492 U.S. at 278–79, 109 S.Ct. at 2922, 106 L.Ed.2d at 240. It simply suggests that once that determination is made and challenged as, and found to be, excessive, the court may itself then decide the matter and a jury trial is then no longer required. That flies in the face of Article 23 of the Declaration of Rights. As we have seen, that Article provides that the "right of trial by jury of all issues of fact in Court proceedings . . . shall be inviolably preserved." It thus guarantees to the citizens of this State the right to a jury trial in civil cases. As this Court said in *Luppino v. Gray*, 336 Md. 194, 201, 647 A.2d 429, 432 (1994):

> "We have held that the reference, in the precursor to Article 23, to jury trial, to which the citizens of Maryland are entitled, is to 'the historical trial by jury, as it existed when the Constitution of the State was first adopted.' *Houston v. Lloyd's Consumer Acceptance Corp.*, 241 Md. 10, 20, 215 A.2d 192, 198 (1965), quoting *Knee v. Baltimore City Passenger Ry. Co.*, 87 Md. 623, 624, 40 A. 890, 891 (1898). Thus, the citizens of Maryland have been guaranteed, since 1776, the right to trial by jury. Moreover, a provision comparable to Article 23 has been in each Constitution, including the Constitution presently in effect, since 1851. Accordingly, it is accurate to say that it is well-settled that Maryland guarantees its civil litigants a right to trial by jury.

In *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935), the United States Supreme Court addressed the propriety of a judgment denying a plaintiff's motion for new trial on the ground of inadequacy of compensatory damages conditioned, however, on the defendant consenting to a specified increase of the damages awarded by the jury. The Fourth Circuit Court of Appeals having reversed the judgment, the Court affirmed. In the course of the opinion, the High Court described the distinction between the court and a jury:

> "The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts. In dealing with questions like the one now under consideration, that distinction must be borne steadily in mind. Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of injury by an assessment of the damages. Both are questions of fact."

*Dimick,* 293 U.S. at 486, 55 S.Ct. at 301, 79 L.Ed. at 611. This Court has drawn a similar distinction between the role of the court and the role of a jury.[7] *Whitehead v. Safway Steel Prods., Inc.,* 304 Md. 67, 73–76, 497 A.2d 803, 806–808 (1985); *Bernardi v. Roedel,* 225 Md. 17, 21, 168 A.2d 886, 887( 1961) ("Courts will be careful not to usurp the role of the jury where facts are disputed or where fair minds might draw different conclusions"); *Stancliff v. H.B. Davis Co.,* 208 Md. 191, 197,

---

7. In Maryland, the distinction is defined somewhat differently in criminal cases.

Article 23 of the Maryland Declaration of Rights, as construed by this Court, establishes a dichotomy, with respect to the determination of questions of law, between the jury's authority to decide "the law of the crime" or "the definition of the crime," as well as "the legal effect of the evidence." and the trial judge's authority to decide all other legal issues. *Montgomery v. State,* 292 Md. 84, 91, 437 A.2d 654, 658 (1981); *Stevenson v. State,* 289 Md. 167, 178–180, 423 A.2d 558, 564–565 (1980).

117 A.2d 577, 580 (1955); *State v. Carroll–Howard Sup. Co.*, 183 Md. 293, 37 A.2d 330 (1944); *Howard County v. Leaf*, 177 Md. 82, 94, 8 A.2d 756, 761 (1939); *Susquehanna Transmission Co. of Maryland v. Murphy*, 131 Md. 340, 343, 101 A. 791, 792 (1917) (questions of fact involved the character, value and extent of injury to timber on property that had been burned, the value of the timber before and after the fire, the extent of the fire, and the direction and velocity of the wind at the time plaintiff's property caught fire, questions going to damages and breach of the standard of care owed by the defendant to the plaintiff). *Deford v. State, Use of Keyser*, 30 Md. 179, 203 (1869) ( as a general rule a jury should determine, as matters of fact, terms and manner of employment; "it being for the court to declare the legal relation that existed between the parties, upon any given state of facts.").

Although by no means identical to compensatory damages and serving a different office, what the *Dimick* court said with regard to the jury function in the compensatory damages context apply equally well to punitive damages. Just as determining liability for a tortuous injury is a factual issue preliminary to the award of compensatory damages, whether that conduct merits, or is sufficiently blameworthy to warrant, punitive damages is also a necessary factual predicate for the award of punitive damages. Of course, the assessment of the amount of damages is a factual issue common to both. And because these matters are factual questions, like in the case of compensatory damages, they are required to be decided by a jury. That the questions may be reviewed by the trial court for excessiveness and found to be so does not change their essential nature. Nor does such review give the trial court any authority to substitute its judgment for that of the jury.[8]

---

8. In *Snyder v. Cearfoss*, 186 Md. 360, 368–69, 46 A.2d 607, 610–611 (1946), the Court of Appeals explained why there is no inconsistency between a trial court being permitted to grant a new trial and a plaintiff's right to a jury trial:

 "In granting a new trial, [the Court] does not assume that the verdict is, but that it may be, wrong. It says to the parties, we are strongly apprehensive that the result is not in accordance with the evidence.

Having decided that the "level" of the damages is excessive, in the absence of the plaintiff's agreement to a lesser amount,[9] Article 23 requires that a new jury, properly instructed, determine what amount the plaintiff should receive. To hold otherwise is to render Article 23 a nullity insofar as jury determinations of punitive damages is concerned. What the *Dimick* court said with regard to a trial court ordering an additur without consent of the plaintiff also has relevance to this case:

> "To [affirm that judgment] is obviously to compel the plaintiff to forego his constitutional right to a verdict of a jury and accept 'an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.' "

293 U.S. at 487, 55 S.Ct. at 301, 79 L.Ed. at 611.

As the majority points out, the cases addressing this issue, both in the federal system under the Seventh Amendment and in the states, under state constitutions, are split, some reaching the conclusion the majority reaches, *e.g., Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 207 (1st Cir.1987); *Douglas v. Metro Rental Services, Inc.,* 827 F.2d 252, 257 (7th Cir.1987); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1279 (7th

---

We think it expedient to submit the case to another jury, and leave it to them to say whether or not our fears are well-founded.... It is settled, then, that the court which tried the cause, may, in a proper case, of which it shall be the judge, set aside the verdict and grant a new trial, under circumstances which at first blush would seem to trench upon the rights of the jury. It can look through the evidence upon which the jury have [sic] passed, and then consider the verdict. It can compare them, and, if the one is clearly irreconcilable with the other, can so pronounce, and order the case to be submitted to another jury."

**9.** *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 611 (1935) provides the rationale for allowing the court to condition a new trial on the plaintiff's agreement to a lesser amount:

"Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off the excrescence."

Cir.1984); *Shimman v. Frank,* 625 F.2d 80, 102–104 (6th Cir.1980); *Guzman v. Western State Bank of Devils Lake,* 540 F.2d 948, 954 (8th Cir.1976); *Airheart v. Green,* 267 Ala. 689, 693, 104 So.2d 687, 690 (1958); *Byrd v. Dark,* 322 Ark. 640, 645, 911 S.W.2d 572, 574 (1995); *Reccko v. Criss Cadillac Co., Inc.,* 610 A.2d 542, 546 (R.I.1992), and the others agreeing with the result I reach. *E.g., Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634, 643 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997); *Morgan v. Woessner,* 997 F.2d 1244, 1258–1259 (9th Cir.1993), *cert. dismissed,* 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994); *Defender Industries v. Northwestern Mut. Life Ins.,* 938 F.2d 502, 505–507 (4th Cir.1991); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1391–1392 (7th Cir.1984); *Leo Payne Pontiac, Inc. v. Ratliff,* 178 Colo. 361, 364–365, 497 P.2d 997, 999 (1972); *Kang v. Harrington,* 59 Haw. 652, 664 n. 3, 587 P.2d 285, 293 n. 3 (1978); *S.C. Farm Bur. Mut. Ins.Co. v. Love Chevrolet, Inc.* 324 S.C. 149, 478 S.E.2d 57, 59 (1996). Not surprising, I suppose, I find the latter to be much more persuasive, perhaps because, for the most part, they address the jury trial issue. As the court in *Morgan v. Woessner* observes, *Rowlett, Shimman, Bell, Douglas,* and *Guzman* do not even consider the Seventh Amendment. 997 F.2d at 1258. Neither do the state courts mention or give indication that they considered the applicable State constitutional provision.

By contrast, in addition to the edifying constitutional discussion in *Morgan v. Woessner,* the Fourth Circuit fully and persuasively addressed the constitutional issue in *Defender Industries,* overruling its prior decision in *Shamblin's Ready Mix, Inc. v. Eaton Corp.,* 873 F.2d 736, 740–742 (4th Cir.1989). In *Shamblin's,* the court had held that there was no violation of the Seventh Amendment when the assessment of punitive damages is not done by a jury; however, its result was largely dictated by its conclusion that punitive damages can be equated with civil penalties. *Id.* at 742.

I repeat, there is considerable difference between determining that a jury award is excessive and determining precisely what it should have been. The former is properly a question

for resolution by the court, the latter most assuredly is not, although it is to be informed by the jury instructions propounded by the court. Only by keeping the difference ever in front of us, even in a category of case that this Court has demonstrated since its decision in *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992) is not favored, can we hope to preserve inviolate the fundamental right to jury trial, a cornerstone of our system of government and justice.